B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS HENRIK AGASYAN | DEFENDANTS SILVA AGASYAN |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.) Dumas & Kim, APC.  915 Wilshire Blvd., Ste. 1775 Los Angeles, CA 90010  TEL: 213/368-5000 FAX: 213/368-5009 | ATTORNEYS (If Known) Stella Havkin, Esq. Havkin & Shrago, 5950 Canoga Ave Ste 400, Woodland Hills, CA 91367-5037 |
|---|---|

**PARTY** (Check One Box Only)
☐ Debtor            ☐ U.S. Trustee/Bankruptcy Admin
☒ Creditor          ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)
☒ Debtor            ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor          ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT
[11. U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(5), 523(a)(6), 523(a)(15)]

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☒ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $   According to Proof |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>  Silva Agasyan | BANKRUPTCY CASE NO.<br>  2:22-bk-16660-NB | |
| DISTRICT IN WHICH CASE IS PENDING<br>  Central | DIVISION OFFICE<br><br>  Los Angeles | NAME OF JUDGE<br>  Honorable Neil Bason |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*Christian T. Kim* | | |
| DATE<br><br>  March 22, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>  Christian T. Kim | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

James A. Dumas, Jr. (SBN 76284)
Christian T. Kim (SBN 231017)
DUMAS & KIM, APC
915 Wilshire Boulevard
Suite 1775
Los Angeles, California 90017
Phone:    213-368-5000
Fax:        213-368-5009

Attorneys for Plaintiff,
Henrik Agasyan

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SILVA AGASYAN,<br><br>　　　　　　Debtor.<br>_____<br><br>HENRIK AGASYAN,<br><br>　　Plaintiff,<br><br>　　vs.<br><br>SILVA AGASYAN, an individual,<br><br>　　Defendant. | Case No.: 2:22-bk-16660-NB<br><br>[Chapter 7]<br><br>[Honorable Neil Bason]<br><br>Adversary No.:<br><br>**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT**<br><br>**[11. U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(5), 523(a)(6), 523(a)(15)]** |

COMES NOW, creditor, Henrik Agasyan ("Plaintiff"), as and for his complaint herein, complains and alleges as follows:

## I.

## THE PARTIES AND JURISDICTION

1.　　This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

1334 and 157, and this is a core proceeding under 28 U.S.C. §§ 157(b)(I).  In the event this proceeding is determined to include non-core claims for relief, the Plaintiff consents to the entry of a final order or judgment by the Bankruptcy Court as to any such claims.  Venue in the Central District of California, Los Angeles Division (the "Bankruptcy Court"), is proper pursuant to 28 U.S.C. § 1409 in that this adversary proceeding is related to the bankruptcy case of Silva Agasyan, bearing case number 2:22-bk-16660-NB, presently pending under Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court. ("Bankruptcy Case")  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 because this is a civil proceeding arising in and/or related to the debtor, Silva Agasyan's, Chapter 7 case.

2.    The Plaintiff, Henrik Agasyan, ("Plaintiff") a creditor and ex-husband of the debtor, Silva Agasyan ("Debtor")

3.    The Debtor commenced its bankruptcy case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court, on December 6, 2022. ("Petition Date")

## II.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

4.    Plaintiff refers to the allegations set forth in paragraph 1 through 3 hereof and incorporates said allegations herein as if fully set forth hereat.

5.    Plaintiff and the Debtor were married in June of 2003.  They have two minor children together.  The Plaintiff is a retired law enforcement officer.

6.    In or around 2015, the Plaintiff and Debtor created the "AHAS Trust."  (the "Trust"). The Trust listed the Debtor as a trustee with authority over the property of the trust, provided that such use was in the best interest of the beneficiaries of the trust and with the consent of Plaintiff. Around the time the AHAS Trust was created, the Plaintiff and Debtor created the "AHAS Trust Account" at Golden State Bank.  The Debtor was employed at Golden State Bank and various other banks and lending institutions before that as a banker and mortgage lending specialist from approximately 1997 to December of 2022.

7.    On or about August 6, 2018, the Plaintiff purchased the Property.  Title to the Property

was held as "Henrik Agasyan and Silva Agasyan, Husband and Wife as Joint Tenants." The Plaintiff paid the entirety of the downpayment of approximately $500,000 to purchase the Property.  The mortgage on the Property was also in the name of the Plaintiff only and the Plaintiff paid all the mortgage payments on the Property.

8.    On or about September 5, 2019, the Debtor convinced the Plaintiff to refinance the Property under the guise that the refinance would ensure a lower interest rate because the Debtor had better credit than the Plaintiff.  The Debtor further persuaded the Plaintiff that title should only be in her name as her sole and separate property to lower payments.  The Plaintiff trusted the Debtor's judgment because the Debtor was an expert in the mortgage lending industry based on her over 20 years of working as a mortgage lending specialist.  Trusting the Debtor, the Plaintiff signed a quit claim deed which purports to transfer title to the Debtor (in name only) as her sole and separate property on or about July 19, 2019. (the "Quit Claim Deed") Plaintiff is informed and believes and thereon alleges that, the Debtor was consulting with divorce attorneys in or around the time that she coerced the Plaintiff to signing the Quit Claim Deed.  The Debtor submitted a fraudulent loan application to Parkside Lending L.L.C., alleging that she makes $420,000 annually. Subsequently, the Debtor was approved for the fraudulent refinance which in fact did ultimately lower the interest rate.

**Intentional Unlawful Transfers from Community and Trust Funds**

9.    On or about November 17, 2019, the Debtor transferred $250,000 from the AHAS Trust Account held at Golden State Bank (where she was a salaried employee) without the consent or knowledge of the Plaintiff.  The said transfer was made to another separate account at Golden State Bank under the Debtor's name only. The Debtor also changed the delivery method of the bank statements to "Hold For Employee Pick-Up" instead of the statements going to their family mailing address (PO Box), keeping the Plaintiff in the dark of the unlawful transfer.

10.    On or about December 18, 2019, the Plaintiff went to Golden State Bank and discovered that the Debtor had transferred $250,000 of funds from the AHAS Trust Account without the consent or knowledge of the Plaintiff. Despite Plaintiff's request to the Debtor's employer, Golden State Bank, that the remaining $142,000 in the AHAS Trust Account be transferred to the Plaintiff for safe keeping, the Debtor was notified by her co-workers at Golden State Bank and

subsequently they conspired and ultimately transferred the entirety of the approximately $142K to the Debtor instead.  The Debtor (who worked at Golden State Bank) withdrew the remaining $142,000 that day. (collectively referred to herein with the $250,000 transfer as the "AHAS Trust Account Transfers") The Debtor further instructed her co-workers to cease communications with the Plaintiff.

11.    On or about December 30, 2019, the Plaintiff discovered that the Debtor had been cheating on him.  The discovery of the infidelity coupled with the criminal submission of the fraudulent loan and the unlawful transferring of approximately $392K, led the Plaintiff to file a petition for divorce in the Los Angeles County Superior Court, Henrik Agasyan v. Silva Agasyan (19STFL15220) (the "Divorce Proceeding").  The Plaintiff and Debtor also separated on December 30, 2019.  ("Separation Date")

12.    On or about December 30, 2019, the family court in the Divorce Proceeding imposed a mutual automatic temporary restraining order against the Plaintiff and the Debtor. ("ATROS")  The ATROS was imposed by operation of law and prevented both the Debtor and Plaintiff from ". . . transferring, encumbering, hypothecating, concealing, or in any way disposing of, any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life."  Plaintiff is informed and believes and thereon alleges that, the Debtor was represented by divorce counsel when the ATROS went into effect.  The Debtor was also personally served with a summons which included the ATROS after the Divorce Proceeding on December 30, 2019.  (A true and correct copy of the ATROS personally served on the Debtor is attached hereto as **Exhibit "A"** and incorporated herein by this reference.)

13.    After the ATROS went into effect, the Plaintiff is informed and believes and thereon alleges that, the Debtor spent the entirety of the $250,000 within six months for a luxury Mercedes Benz SUV, shopping sprees, and other large cash withdrawals.  On June 23, 2021, the Debtor was found guilty of criminal contempt for the Debtor's intentional and malicious violation of the ATROS by the family law court in the Divorce Proceeding in an order entered on August 23, 2021, and the Debtor was ordered to pay the Plaintiff, $93,284.  ("August 2021 Order")  (A true and correct copy of the August 2021 Order is attached hereto as **Exhibit "B"** and incorporated herein by this reference.)

The Plaintiff is still owed the difference of $31,716.00 to make up for half of the $250K.

14.     Following the Plaintiff's complaints to various government entities, Golden State Bank interplead the $142,000 into the family court.  The $142,000 was later transferred to the Plaintiff's divorce attorneys to place in a trust account by a family court order in the Divorce Proceedings for support issues. The interpleader which was a direct cause of the Debtor cost the Plaintiff approximately $75,000 in attorneys' fees.

15.     On or about May 12, 2021, the Debtor withdrew $400,000 from a previously approved HELOC ("HELOC") without providing the Plaintiff notice, without the Plaintiff's consent and without approval from the family court in direct violation of the ATROS.  The Debtor later testified in the Divorce Proceeding that all these funds were used in violation of the ATROS.  As a result of the Debtor's intentional actions, the Plaintiff owes additional interest of at least $12,999.87 on the HELOC.  The family law court in the Divorce Proceeding found that the Debtor breached her fiduciary duty to the Plaintiff based on her actions and ordered her to return the $400,000 and provide an accounting regarding the dissipation of these funds in an order entered on December 3, 2021. ("December 2021 Order")  The Debtor has refused to comply with the December 2021 Order entirely.  (A true and correct copy of the December 2021 Order is attached hereto as **Exhibit "C"** and incorporated herein by this reference.)

16.     Additionally, following the issuance of the ATROS, the Debtor withdrew $101,000 from a community property IRA with Fidelity Investments in an intentional violation of the ATROS and without the Plaintiff's consent or knowledge.  The Debtor has refused to return or account for the dissipation of these IRA funds.

**Intentional Refusals to Cooperate in the Sale and Maintenance of the Property in Violation of Family Law Court Orders**

17.     On September 11, 2020, the Plaintiff and Debtor stipulated to an agreement regarding temporary support, sale of the family residence, and division of property in the family court. ("Stipulation") Paragraphs 1 and 2 of the order approving the Stipulation provided that:

> Respondent Silva Agasyan shall have 75 days refinance and buy Petitioner
> out of the Haven Residence. The FMV of the property is stipulated by the

parties to be $2.0 million with an encumbrance of $1,166,735 as of this date, for equity of $833,264, leaving a buyout price of $416,632 to Petitioner. Any buyout funds paid to Petitioner shall be held by his counsel until further order of the court or written stipulation signed by the parties. If Respondent cannot refinance within 75 days, the property shall be listed and sold by a real estate agent to be selected by the Court, unless mutually agreed upon by the parties.

18.    The Debtor failed to refinance the Property within 75 days and repeatedly refused to cooperate in the sale process.  The Debtor refused to cooperate in the listing for sale once the 75 days had lapsed, continuously delaying and frustrating the efforts of three real estate brokers, including refusing to sign a Listing Agreement, three real estate appraisals as well as photographers and videographers.  . On June 23, 2021, the debtor was found Guilty of Criminal Contempt of Court. It was proven Beyond a Reasonable Doubt that "….the cite violated the order by not cooperating in the listing of the property for sale." And "…. The failure to list the property was knowing and willful violation of the order." The Debtor was also sentenced to at least 100 hours of community service, none of which she has done to this date. In March of 2022, the Debtor repeatedly and intentionally delayed the sale of the Property to thwart the sale even though the offer to purchase was $2,820,000 ($325,000 over asking) using a variety of frivolous reasons.  The Debtor knew that the buyers for the Property had to close by April 15, 2022, to take advantage of a specific loan program and ultimately refused to sign the grant deed.  The sale did not close by April 15, 2022, and the sale fell out of escrow.  Because of the Debtor refusing to sign the grant deed (which was the last and only step needed to close escrow), the buyer, Sonya Melkonyan, filed a complaint in the Los Angeles County Superior Court against the Plaintiff, the Debtor and Glen Oaks Escrow on June 22, 2022 (LASC Case No. , which cost the Plaintiff $12,000 to defend both himself and the Debtor from community funds.

19.    After a July 20, 2022, order granted the Plaintiff exclusive possession of the Property, the Plaintiff took possession of the Property in September of 2022.  The Plaintiff accepted an offer for the Property for $2,650,000, but the Debtor repeatedly refused to sign the Purchase Agreement. As a consequence, the Plaintiff incurred attorneys' fees on an *ex parte* motion requesting sole authority to sign any and all escrow documents and/or related title documents.  The *ex parte* motion was granted on November 1, 2022, but the title company would not accept just the Plaintiff's signature and the sale fell out of escrow.

20.     After the Debtor filed for bankruptcy, the Property was sold by the bankruptcy trustee, John Menchaca, ("Trustee") for a sale price of $2,650,000 on March 20, 2023.  As a consequence of the Debtor's intentional actions in refusing to sign the grant deed to close the $2,820,000 sale the Plaintiff was damaged in an amount of $162,000 (half of the $325,000 shortfall) and interest, plus the amount of the Trustee's fee for selling the Property of approximately $107,850 (half of which is $53,925) and half the unknown amount of the attorney's fees the Trustee incurred which will be paid from the sale, but would have been avoided but for the Debtor's refusal to sign the grant deed on the sale for $2,820,000.

21.     In addition, while the Debtor was the sole occupant of the Property, the Debtor intentionally refused to pay the mortgage, property taxes, homeowner's insurance, and utilities for the Property, nearly forcing the Property into foreclosure.  Consequently, the Plaintiff had to pay $59,115.17 to the mortgage company to ensure that the Property was not foreclosed.  The Debtor also refused to pay necessary maintenance, repairs and utilities and the Plaintiff was forced to pay $11,386.92, $3,000, and $3,000 respectively.  The Debtor also cashed a check from State Farm Insurance in the amount of $3,886.92, which was to be used to repair water damage to the Property. The Debtor intentionally did not use any of these funds to repair any of the water damage.  In total, the Plaintiff spent $42,547.68 on these necessary costs.

22.     Under the California Court of Appeal case, In re Marriage of Watts, 171 Cal.App.3d 366 (1985), the Debtor was required to reimburse the community for her exclusive possession of the Property during which time she did not pay the mortgage or any necessary maintenance costs. ("Watts Claim").  During the time the Debtor was solely occupying the Property from around December 30, 2019 to September 2022, she intentionally failed to reimburse the community for the rental value of the Property.  Based on appraisal of rental value, the total rental value of the Property during the Debtor's possession of the Property is approximately $346,500 of which half, i.e. $173,250, is due to the Plaintiff.  Despite having been represented by divorce attorneys during the period when she occupied the Property, the Debtor failed to pay one dollar on the Watts Claim and reimburse the community.

///

**Violation of Family Law Court Orders for Professional Fees and Contempt Sanctions**

23.     The Debtor has been sanctioned by the family court in the Divorce Proceeding for violating the ATROS and court orders.  Although some of these sanctions, including attorneys' fees, have been paid from the $142,000 that was being held by the Plaintiff's divorce attorneys, there are several sanctions that remain unpaid.

24.     On September 15, 2021, the family court ordered the Debtor to pay the Plaintiff a total of $56,410 to pay for the Debtor's attorney and forensic accountant fees to be payable within 60 days. ("September 2021 Order") The September 2021 Order further provided that this amount would accrue at the California legal rate of interest of 10 percent per annum from November 10, 2021, until paid full, and is to be paid from the sale of the Property.  (A true and correct copy of the September 2021 Order is attached hereto as **Exhibit "D"** and incorporated herein by this reference.)

25.     On May 6, 2022, the family law court in the Divorce Proceeding entered an *ex parte* order sanctioning the Debtor in the amount of $10,000 for refusing to cooperate in the sale of the Property. ("May 2022 Order") The Debtor has refused to pay this sanction award and the Plaintiff is entitled to payment of the sanction order plus legal interest at the rate of 10 percent per annum from the date of the sale of the Property pursuant to the May 2022 Order.  (A true and correct copy of the May 2022 Order is attached hereto as **Exhibit "E"** and incorporated herein by this reference.)

26.     Plaintiff reserves the right to claim additional attorneys' fees and sanctions against the Debtor following the pending hearings on attorneys' fees and sanctions currently set for hearing on in the Divorce Proceeding on May 8, 2023.

**Conversion of Plaintiff's Personal Property**

27.      In or around December of 2019, the Plaintiff stored a diamond ring and Cartier watch at the Property with a value of at least $15,000.  The diamond ring was insured for $10,000.  The Plaintiff is informed and believes and thereon alleges that, the Debtor converted the ring and Cartier watch for her personal use or sold for her personal gain.

28.     After the ATROS was issued and while the Debtor was the sole occupant of the Property, Plaintiff is informed and believes and thereon alleges that, the Debtor intentionally converted the personal property of the Plaintiff who used to operate a law enforcement

uniform/equipment shop.  Such property consisted of brand new leather and nylon gear, holsters, belts, very expensive flashlights and lighting gear left from when the Plaintiff closed his uniform/equipment shop plus the Plaintiff's bullet proof vests, expensive camera equipment, video equipment, binoculars, that were used by the Plaintiff while working as a private investigator. (collectively the "Law Enforcement Equipment")  Based on the Plaintiff's many years of experience working as a law enforcement officer, private investigator and uniform/equipment shop owner, the value of the Law Enforcement Equipment is estimated to be approximately $55,000.

29.    After the commencement of the Divorce Proceeding, the parties had three "community" vehicles which were all under the Plaintiff's name. The Plaintiff paid the monthly payments, insurance, and maintenance of 3 vehicles. As early as possible, the Plaintiff terminated the lease of the 2018 Mercedes and incurred an additional "early Termination fee". On September 4, 2020, the Plaintiff paid $11,232.50. From December 2019 to September 2020, the Plaintiff made monthly payments of $1,700, totaling $17,000 on the Mercedes lease. In total the Plaintiff paid $28,232.50 (not including the insurance, registration and the maintenance of the vehicle).  The Debtor retained possession of the 2017 Land Rover, which the Debtor repeatedly refused to turn over, even though in January of 2020 she prepaid for a 3-year lease of a 2018 luxury Mercedes Benz SUV, with the $250K she squandered from the community property AHAS Trust Account. From December 2019 until August 2020, the Plaintiff additionally made monthly lease payments of $1,100 on the 2017 Land Rover, amounting to $9,900. This additional expense was again due to the Debtor's refusal to cooperate in the ending of the lease and turning over the vehicle. The Plaintiff also had to pay insurance premiums and fix the damages on the vehicle prior to returning the vehicle. The Plaintiff solely paid all the expenses for the 2019 Dodge Durango including but not limited to the monthly payments, the insurance, registration and maintenance.  After the Plaintiff filed for divorce, he was forced to pay for community property expenses of the home for work that was done to the former family residence. The Plaintiff paid: (1) Surveillance Cameras and Sound System for the house was $18,305.49 which Plaintiff paid for which Plaintiff is owed $9,152.75; (2) Lighting for the Property was $7,000.00 (per contract) which Plaintiff paid for which Plaintiff is owed $3,500.
///

From December 2019 to September 2020, the Plaintiff made monthly payments of $1,700, totaling $17,000 on the Mercedes lease.  Due to the inability to turn in the vehicle because the Debtor's refusal to turn in the vehicle, the Plaintiff incurred $28,232.50 in costs.  From December 2019 until August 2020, the Plaintiff additionally made monthly lease payments of $1,100 on the 2017 Land Rover, amounting to $9,900.  This additional expense was again due to the Debtor's refusal to cooperate in the ending of the lease and turning over the vehicle.

## **FIRST CLAIM FOR RELIEF**

### **(11 U.S.C. §523(a)(2)(A)**

30.    Plaintiffs refer to the allegations set forth in paragraph 1 through 29 hereof and incorporates said allegations herein as if fully set forth hereat.

31.    The Debtor made representations to the Plaintiff with the intent to deceive the Plaintiff, including coercing the Plaintiff to sign the Quit Claim Deed under the guise that the Debtor's purpose was to lower the interest rate on the mortgage for the Property.  The Debtor's true purpose, however, was to prepare for a divorce filing where she would claim that the Property was her sole and separate property and seek to dissipate, convert, steal money derived from the Property, including the fraudulent and malicious HELOC to the Debtor's personal gain.

32.    At the time the Debtor made the representations regarding the Quit Claim Deed and coerced the Plaintiff agree to a refinance and sign the Quit Claim Deed, the Debtor knew that her representations were false.

33.    The Plaintiff justifiably relied on the Debtor's representation regarding the Quit Claim Deed based on her 25 plus years of working in the banking industry as a mortgage lending specialist, and the past history between the Plaintiff and Debtor where the Debtor often handled such matters while the Parties engaged in the business of flipping homes.

34.    The Plaintiff has suffered tremendous damages because of the Debtor's lies and misrepresentations, including the equity that was lost due to the fraudulent and malicious HELOC, among other damages. As such, the Plaintiff is entitled to a judgment under 11 U.S.C. §523(a)(2)(A), plus interest, reasonable attorney's fees in an amount according to proof.

## **SECOND CLAIM FOR RELIEF**

### **(11 U.S.C. §523(a)(4)**

35.     Plaintiffs refer to the allegations set forth in paragraph 1 through 29 hereof and incorporates said allegations herein as if fully set forth hereat.

36.     As a co-trustee of the AHAS Trust, the Debtor had a fiduciary duty to the Plaintiff as a co-trustee of the AHAS Trust.

37.     California law creates a fiduciary relationship between separated spouses during the pendency of a divorce proceeding.

38.     At the time the Debtor was a fiduciary and a trustee of the AHAS Trust and/or following the issuance of the ATROS, the Debtor engaged in numerous breaches of her fiduciary duties, as a trustee and spouse, including the intentional and malicious withdrawal of the fraudulent HELOC (approximately $412,000), the intentional transfers of $250,000 and $142,000 from the AHAS Trust, repeated refusals to cooperate in the sale of the Property, among other breaches of her fiduciary duties as alleged herein.

39.     The Plaintiff has suffered tremendous damages because of the Debtor's numerous breaches of her fiduciary duty.  As such, the Plaintiff is entitled to a judgment under 11 U.S.C. §523(a)(4), plus interest, reasonable attorney's fees in an amount according to proof.

## **THIRD CLAIM FOR RELIEF**

### **(11 U.S.C. §523(a)(5)**

40.     Plaintiffs refer to the allegations set forth in paragraph 1 through 29 hereof and incorporates said allegations herein as if fully set forth hereat.

41.     The family law court in the Divorce Proceeding set aside the $142,000 that was interplead by Golden State Bank for the support of the community and Plaintiff during the pendency of the Divorce Proceeding.  The said funds have been substantially exhausted based on the numerous sanctions and attorneys' fee awards against the Debtor.

42.     The Debtor owes the Plaintiff approximately $87,060 in professional fees, plus interest that were ordered to be paid from the Debtor to the Plaintiff by the family law court, plus additional

attorney's fees and sanctions that may be awarded against the Debtor and for the Plaintiff prior to trial in the within adversary proceeding.  Plaintiff reserves all rights as to seek a nondischargeability judgment as to any additional sanctions and/or attorney's fees.

43.    The aforementioned debts of the Debtor are domestic support obligations under 11 U.S.C. §523(a)(5) and nondischargeable.  As such, the Plaintiff is entitled to a judgment under 11 U.S.C. §523(a)(5), plus interest in an amount according to proof.

### FOURTH CLAIM FOR RELIEF

### (11 U.S.C. §523(a)(6)

44.    Plaintiffs refer to the allegations set forth in paragraph 1 through 29 hereof and incorporates said allegations herein as if fully set forth hereat.

45.    The Debtor knew that her actions as alleged in the Complaint herein, including the HELOC withdrawal, AHAS Trust Account Transfers, the Watts Claim, the refusal to turn over the 2017 Land Rover, the misrepresentations to coerce the Plaintiff to sign the Quit Claim Deed, conversion of the Plaintiff's personal property, and other actions asserted in the Complaint, would certainly harm the Plaintiff.

46.    The Debtor intentionally engaged in the actions that she knew would necessarily cause harm to the Plaintiff and the Debtor did so with malicious intent.

47.    The Debtor knew at all times that she had no justification or other excuse in maliciously causing harm to the Plaintiff.

48.    The Plaintiff has suffered tremendous damages because of the Debtor's intentional and malicious actions done for the sole purpose of harming the Plaintiff and for her personal gain. Accordingly, the Plaintiff is entitled to a judgment under 11 U.S.C. §523(a)(6) , plus interest in an amount according to proof.

///

///

///

///

### FIFTH CLAIM FOR RELIEF

### (11 U.S.C. §523(a)(15)

49.    Plaintiffs refer to the allegations set forth in paragraph 1 through 29 hereof and incorporates said allegations herein as if fully set forth hereat.

50.    The Debtor incurred numerous debts to the Plaintiff during the course of the Divorce Proceeding which commenced after the issuance of the ATROS on December 30, 2019.

51.    During the course of the Divorce Proceeding, the Debtor has refused to comply with the family law court's orders, including the ATROS, August 2021 Order, September 2021 Order, December 2021 Order, and May 2022 Order, among other orders.

52.    Due to the Debtor's refusal to comply with the said orders, the Plaintiff is entitled to a judgment under 11 U.S.C §523(a)(15) for the amounts due to Plaintiff pursuant to said orders plus interest.

### PRAYER

**WHEREFORE**, Plaintiffs pray for judgment as follows:

### ON THE FIRST CLAIM FOR RELIEF:

1.    For a nondischargeability judgment against the Defendant and in an amount to be determined at trial and reasonable attorney's fees.

### ON THE SECOND CLAIM FOR RELIEF:

2.    For a nondischargeability judgment against the Defendant and in an amount to be determined at trial.

### ON THIRD CLAIM FOR RELIEF

3.    For a nondischargeability judgment against the Defendant and in an amount to be determined at trial.

### ON FOURTH CLAIM FOR RELIEF

4.    For a nondischargeability judgment against the Defendant and in an amount to be determined at trial and reasonable attorney's fees.

### ON FIFTH CLAIM FOR RELIEF

5.      For a nondischargeability judgment against the Defendant and in an amount to be determined at trial.

**ON ALL CLAIMS FOR RELIEF**

6.      For prejudgment interest;

7.      For costs of suit; and

8.      For such other relief as the Court deems just and proper.

Dated: March 22, 2023                         DUMAS & KIM, APC

                                              By: _____
                                              Christian T. Kim,
                                              Attorneys for Plaintiff,
                                              Henrik Agasyan

# EXHIBIT "A"

# EXHIBIT "A"

**SUMMONS (Family Law)**

CITACIÓN (Derecho familiar)

FL-110

**NOTICE TO RESPONDENT (Name):**
*AVISO AL DEMANDADO (Nombre):*
SILVA AGASYAN

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 3 0 2019

Sherri R. Carter, Executive Officer/Clerk of Court

By: Joanne Esplana, Deputy

You have been sued. Read the information below and on the next page.
*Lo han demandado. Lea la información a continuación y en la página siguiente.*

Petitioner's name is:
*Nombre del demandante:* HENRIK AGASYAN

CASE NUMBER (NÚMERO DE CASO): 19STFL15320

| | |
|---|---|
| You have 30 calendar days after this *Summons* and *Petition* are served on you to file a *Response* (form FL-120) at the court and have a copy served on the petitioner. A letter, phone call, or court appearance will not protect you. | *Tiene 30 días de calendario después de haber recibido la entrega legal de esta Citación y Petición para presentar una Respuesta (formulario FL-120) ante la corte y efectuar la entrega legal de una copia al demandante. Una carta o llamada telefónica o una audiencia de la corte no basta para protegerlo.* |
| If you do not file your *Response* on time, the court may make orders affecting your marriage or domestic partnership, your property, and custody of your children. You may be ordered to pay support and attorney fees and costs. | *Si no presenta su Respuesta a tiempo, la corte puede dar órdenes que afecten su matrimonio o pareja de hecho, sus bienes y la custodia de sus hijos. La corte también le puede ordenar que pague manutención, y honorarios y costos legales.* |
| For legal advice, contact a lawyer immediately. Get help finding a lawyer at the California Courts Online Self-Help Center (www.courts.ca.gov/selfhelp), at the California Legal Services website (www.lawhelpca.org), or by contacting your local county bar association. | *Para asesoramiento legal, póngase en contacto de inmediato con un abogado. Puede obtener información para encontrar un abogado en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en el sitio web de los Servicios Legales de California (www.lawhelpca.org) o poniéndose en contacto con el colegio de abogados de su condado.* |
| **NOTICE—RESTRAINING ORDERS ARE ON PAGE 2:** These restraining orders are effective against both spouses or domestic partners until the petition is dismissed, a judgment is entered, or the court makes further orders. They are enforceable anywhere in California by any law enforcement officer who has received or seen a copy of them. | *AVISO—LAS ÓRDENES DE RESTRICCIÓN SE ENCUENTRAN EN LA PÁGINA 2: Las órdenes de restricción están en vigencia en cuanto a ambos cónyuges o miembros de la pareja de hecho hasta que se despida la petición, se emita un fallo o la corte dé otras órdenes. Cualquier agencia del orden público que haya recibido o visto una copia de estas órdenes puede hacerlas acatar en cualquier lugar de California.* |
| **FEE WAIVER:** If you cannot pay the filing fee, ask the clerk for a fee waiver form. The court may order you to pay back all or part of the fees and costs that the court waived for you or the other party. | *EXENCIÓN DE CUOTAS: Si no puede pagar la cuota de presentación, pida al secretario un formulario de exención de cuotas. La corte puede ordenar que usted pague, ya sea en parte o por completo, las cuotas y costos de la corte previamente exentos a petición de usted o de la otra parte.* |

[SEAL]

1. The name and address of the court are (*El nombre y dirección de la corte son*):
   LOS ANGELES COUNTY SUPERIOR COURT
   111 NORTH HILL STREET
   LOS ANGELES, CA 90012

2. The name, address, and telephone number of the petitioner's attorney, or the petitioner without an attorney, are: (*El nombre, dirección y número de teléfono del abogado del demandante, o del demandante si no tiene abogado, son*):
   Henrik Agasyan, in Pro Per
   2029 Verdugo Boulevard #171
   Montrose, CA  91020
   818-429-6325

Date (*Fecha*): DEC 3 0 2019        Clerk, by (*Secretario, por*) _____Joanne Esplana_____, Deputy (*Asistente*)

SHERRI R. CARTER

Form Adopted for Mandatory Use
Judicial Council of California
FL-110 [Rev. January 1, 2015]

**SUMMONS**
**(Family Law)**

Family Code, §§ 232, 233, 2024.7, 2040, 7700;
Code of Civil Procedure, §§ 412.20, 415.60–415.95
www.courts.ca.gov

CEB
ceb.com

Essential
Forms

Agasyan, Henrik

## STANDARD FAMILY LAW RESTRAINING ORDERS

**Starting immediately, you and your spouse or domestic partner are restrained from:**

1. removing the minor children of the parties from the state or applying for a new or replacement passport for those minor children without the prior written consent of the other party or an order of the court;

2. cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life, health, automobile, and disability, held for the benefit of the parties and their minor children;

3. transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasi-community, or separate, without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life; and

4. creating a nonprobate transfer or modifying a nonprobate transfer in a manner that affects the disposition of property subject to the transfer, without the written consent of the other party or an order of the court. Before revocation of a nonprobate transfer can take effect or a right of survivorship to property can be eliminated, notice of the change must be filed and served on the other party.

You must notify each other of any proposed extraordinary expenditures at least five business days prior to incurring these extraordinary expenditures and account to the court for all extraordinary expenditures made after these restraining orders are effective. However, you may use community property, quasi-community property, or your own separate property to pay an attorney to help you or to pay court costs.

## ÓRDENES DE RESTRICCIÓN ESTÁNDAR DE DERECHO FAMILIAR

*En forma inmediata, usted y su cónyuge o pareja de hecho tienen prohibido:*

1. *llevarse del estado de California a los hijos menores de las partes, o solicitar un pasaporte nuevo o de repuesto para los hijos menores, sin el consentimiento previo por escrito de la otra parte o sin una orden de la corte;*

2. *cobrar, pedir prestado, cancelar, transferir, deshacerse o cambiar el nombre de los beneficiarios de cualquier seguro u otro tipo de cobertura, como de vida, salud, vehículo y discapacidad, que tenga como beneficiario(s) a las partes y su(s) hijo(s) menor(es);*

3. *transferir, gravar, hipotecar, ocultar o deshacerse de cualquier manera de cualquier propiedad, inmueble o personal, ya sea comunitaria, cuasicomunitaria o separada, sin el consentimiento escrito de la otra parte o una orden de la corte, excepto en el curso habitual de actividades personales y comerciales o para satisfacer las necesidades de la vida; y*

4. *crear o modificar una transferencia no testamentaria de manera que afecte la asignación de una propiedad sujeta a transferencia, sin el consentimiento por escrito de la otra parte o una orden de la corte. Antes de que se pueda eliminar la revocación de una transferencia no testamentaria, se debe presentar ante la corte un aviso del cambio y hacer una entrega legal de dicho aviso a la otra parte.*

*Cada parte tiene que notificar a la otra sobre cualquier gasto extraordinario propuesto por lo menos cinco días hábiles antes de realizarlo, y rendir cuenta a la corte de todos los gastos extraordinarios realizados después de que estas órdenes de restricción hayan entrado en vigencia. No obstante, puede usar propiedad comunitaria, cuasicomunitaria o suya separada para pagar a un abogado que lo ayude o para pagar los costos de la corte.*

## NOTICE—ACCESS TO AFFORDABLE HEALTH INSURANCE: Do you or someone in your household need affordable health insurance? If so, you should apply for Covered California. Covered California can help reduce the cost you pay towards high quality affordable health care. For more information, visit www.coveredca.com. Or call Covered California at 1-800-300-1506.

## AVISO—ACCESO A SEGURO DE SALUD MÁS ECONÓMICO: ¿Necesita seguro de salud a un costo asequible, ya sea para usted o alguien en su hogar? Si es así, puede presentar una solicitud con Covered California. Covered California lo puede ayudar a reducir el costo que paga por seguro de salud asequible y de alta calidad. Para obtener más información, visite www.coveredca.com. O llame a Covered California al 1-800-300-0213.

## WARNING—IMPORTANT INFORMATION

California law provides that, for purposes of division of property upon dissolution of a marriage or domestic partnership or upon legal separation, property acquired by the parties during marriage or domestic partnership in joint form is presumed to be community property. If either party to this action should die before the jointly held community property is divided, the language in the deed that characterizes how title is held (i.e., joint tenancy, tenants in common, or community property) will be controlling, and not the community property presumption. You should consult your attorney if you want the community property presumption to be written into the recorded title to the property.

## ADVERTENCIA—INFORMACIÓN IMPORTANTE

*De acuerdo a la ley de California, las propiedades adquiridas por las partes durante su matrimonio o pareja de hecho en forma conjunta se consideran propiedad comunitaria para fines de la división de bienes que ocurre cuando se produce una disolución o separación legal del matrimonio o pareja de hecho. Si cualquiera de las partes de este caso llega a fallecer antes de que se divida la propiedad comunitaria de tenencia conjunta, el destino de la misma quedará determinado por las cláusulas de la escritura correspondiente que describen su tenencia (por ej., tenencia conjunta, tenencia en común o propiedad comunitaria) y no por la presunción de propiedad comunitaria. Si quiere que la presunción comunitaria quede registrada en la escritura de la propiedad, debería consultar con un abogado.*

CEB  Essential Forms

**SUMMONS**
(Family Law)

Agasyan, Henrik

# EXHIBIT "B"

# EXHIBIT "B"

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(name, state bar number, and address)*:<br>GOVERNMENTAL AGENCY *(pursuant to Family Code, §§ 17400, 17404)*:<br>Donald P. Schweitzer                166412<br>Schweitzer Law Partners, APC<br>201 S. Lake Avenue, Suite 800<br>Pasadena, CA 91101<br>TELEPHONE NO.*(Optional)*: (626) 683-8113    FAX NO.*(Optional)*: (626) 356-0102<br>E-MAIL ADDRESS*(Optional)*:   Don@pasadenalawoffice.com<br>ATTORNEY FOR *(Name)*:   Petitioner, Henrik Agasyan | FOR COURT USE ONLY<br><br>CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>AUG 23 2021<br><br>Sherri R. Carter, Executive Officer/Clerk of Court<br>By: Lily Yu, Deputy |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles<br>STREET ADDRESS: 111 N. Hill Street<br>MAILING ADDRESS: Same as above<br>CITY AND ZIP CODE: Los Angeles, CA 90012<br>BRANCH NAME: Central District |

| | |
|---|---|
| PETITIONER/PLAINTIFF: Henrik Agasyan<br><br>RESPONDENT/DEFENDANT: Silva Agasyan<br><br>OTHER PARENT: | |

| | |
|---|---|
| **FINDINGS AND ORDER REGARDING CONTEMPT**<br>**(Family Law)** | CASE NUMBER:<br>19STFL15220 |

1. This matter proceeded as follows: ☐ Uncontested  ☐ By stipulation  ☒ Contested
   - a. Date: 6/22/21 & 6/23/21    Dept.: 42    Judicial officer:  Hon. Christine Byrd
   - b. ☒ Petitioner/Plaintiff present      ☒ Attorney present *(name)*:  Donald P. Schweitzer
   - c. ☒ Respondent/Defendant present      ☒ Attorney present *(name)*:  Denise Lite
   - d. ☐ Other parent present      ☐ Attorney present *(name)*:
   - e. Governmental agency by *(name)*:
   - f. ☐ Other appearances *(specify)*:
   - g. On the *Order to Show Cause and Affidavit for Contempt* (form FL-410)
     Filed by Petitioner                    on *(date)*: 12/17/2020 and 2/1/2021

2. The "Citee" for purposes of this order is  ☐ Petitioner/Plaintiff   ☒ Respondent/Defendant
   ☐ Other *(specify)*:

3. a. Citee has been advised of rights to:
   | | | | |
   |---|---|---|---|
   | (1) ☒ counsel | | ☐ requested | ☐ waived right |
   | (2) ☐ appointed counsel | | ☐ requested | ☒ waived right |
   | (3) ☐ continuance to obtain counsel | | ☐ requested | ☐ waived right |
   | (4) ☒ a hearing/trial (to cross-examine, call, and compel the attendance of witnesses) | | ☐ requested | ☐ waived right |
   | (5) ☒ privilege against self-incrimination | | ☐ requested | ☐ waived right |
   | (6) ☐ other *(specify)*: | | ☐ requested | ☐ waived right |

   b. ☐ Written advisement and waiver of rights attached.

**THE COURT FINDS:**

4. ☐ Citee knowingly, intelligently and voluntarily waived rights as set forth in item 3.

5. a. ☒ There are valid orders of the court.
   b. ☒ Citee had knowledge of the orders. 1. Failing to give adequate notice to Petitioner when she
   c. ☒ Citee violated the orders by *(specify)*: engaged in extraordinary expenditures and 2. Failing to list the family residence for sale
   d. ☐ Citee has freely and voluntarily admitted to the defaults/violations specified in item 6.
   e. ☐ There is a factual basis for the plea entered.
   f. ☒ Other *(specify)*: Citee had the ability to comply with the orders.

6. Citee is guilty of contempt of court for the following counts (defaults/violations) alleged in the *Order to Show Cause and Affidavit for Contempt* (form FL-410) *(specify)*: Count 1(12/17/20 OSC):1/10/20;1/11/20;1/13/20;1/17/20;3/17/20
   Count 2 (12/17/20 OSC)

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>FL-415 [Rev. July 1, 2003]<br>CEB Essential Forms<br>ceb.com | **FINDINGS AND ORDER REGARDING CONTEMPT**<br>**(Family Law-Domestic Violence Prevention-**<br>**Uniform Parentage-Governmental)**    Agasyan, Henrik | Family Code, §§ 17400, 17402, 17404<br>CCP, §§ 1209, 1218<br>www.courtinfo.ca.gov |

AUG 30 2021

| PETITIONER/PLAINTIFF: Henrik Agasyan | CASE NUMBER: |
|---|---|
| RESPONDENT/DEFENDANT: Silva Agasyan | 19STFL15220 |
| OTHER PARENT: | |

7.  a.  ☒ Citee is not guilty of contempt of court for the following counts (defaults/violations) alleged in the *Order to Show Cause and Affidavit for Contempt* (form FL-410) *(specify)*: Count 1 of the 2/1/2021 OSC

   b.  ☐ Citee has a previous finding of contempt *(specify)*:

8.  ☒ Citee waived time for sentencing.
9.  ☐ Citee waived time for trial.
10. ☐ Citee failed to appear as ordered.
11. ☐ Other *(specify)*:

**THE COURT ORDERS**

12. a.  ☐ That the following counts alleged in the *Order to Show Cause and Affidavit for Contempt* (form FL-410) *(specify)*:

   ☐ are dismissed   ☐ with prejudice   ☐ without prejudice.

   b.  ☒ That the request to dismiss the following counts alleged in the *Order to Show Cause and Affidavit for Contempt* (form FL-410) *(specify)*: Counts 1&2 of 12/17/20 OSC   is denied.

13. ☒ Citee must perform 100 hours of community service for counts *(specify)*: 1 and 2 of 12/17/20 OSC
   a.  ☒ To commence on *(date)*: Suspended for 1 year   to be completed by *(date)*:
       Citee must report to *(specify)*:
       on *(date)*:   at *(time)*:
   b.  ☐ Citee must pay an administrative fee   ☐ of $
                                                ☐ as determined by the community service agency

14. ☐ Citee must serve _____ hours in the county jail for counts *(specify)*:
   ☐ To commence on *(date)*:   to be completed by *(date)*:
   Citee must report to *(specify)*:
   on *(date)*:   at *(time)*:

15. ☒ Citee must pay:
   a.  ☒ attorney fees in the total amount of $ TBD   payable to *(specify name)*: Petitioner
       A briefing schedule was ordered with a hearing set for 9/15/21
   b.  ☐ fines in the total amount of $

16. a.  ☐ The contempt proceedings are suspended on condition that citee comply with all terms and conditions of this order.
    b.  ☐ Imposition of sentence is suspended on condition that citee comply with all terms and conditions of this order.

17. ☒ Execution of sentence for   ☒ 100 hours of community service   ☐ _____ hours in county jail
   will be suspended for a period of 1 year   and citee is placed on court probation on condition that citee
   comply with all terms and conditions of this order, and
   a.  ☐ Comply with current support order.
   b.  ☐ Pay at least $ _____ per month on current support order, payable to *(specify name)*:
                                                commencing *(date)*:
   c.  ☐ Pay at least $ _____ per month on arrears commencing *(date)*:
   d.  ☐ Serve any remaining hours not suspended as specified in items 13 and 14.

18. ☐ Citee must seek and maintain employment and must keep written records, copies of which must be forwarded by the 5th day
   of each month as follows to the   ☐ Local Child Support Agency   ☐ court
   ☐ other *(specify)*:
   a.  Records of efforts to gain employment must include the name, address, and telephone numbers of individuals and
       firms contacted regarding employment, the dates of such contact and the anticipated results.
   b.  Records of all actual employment must include the name of the employer, dates, and hours worked and the gross
       and net amounts of income from each employer.

---

FL-415 [Rev. July 1, 2003]   **FINDINGS AND ORDER REGARDING CONTEMPT**   Page 2 of 3
CEB® Essential Forms   (Family Law-Domestic Violence Prevention-
ceb.com   Uniform Parentage-Governmental)   Agasyan, Henrik

| PETITIONER/PLAINTIFF: Henrik Agasyan | CASE NUMBER: |
|---|---|
| RESPONDENT/DEFENDANT: Silva Agasyan | 19STFL15220 |
| OTHER PARENT: | |

19. Orders for payments required to be made as conditions of probation or suspension of sentence in this order do not modify a court ordered support obligation.

20. Citee must provide written notification to the superior court clerk of any change in residence and to ☐ the local child support agency ☐ the other party of any change of residence, income, or employment within 10 days of the change.

21. ☐ A wage and earnings assignment will issue.

22. ☒ This matter is continued to (date): 9/15/2021          at (specify time): 1:30 p.m.
in court department (specify): 42      room (specify): 416     of this court for  ☒ further hearing
☐ compliance review. Citee is ordered to personally appear in court on that date and time.
**WARNING:** Failure to appear may result in issuance of a bench warrant for citee's arrest.

23. ☐ A *Warrant of Attachment* will issue for citee's arrest. Bail is set in the sum of: $
☐ Execution of the *Warrant of Attachment* is stayed until (date) :
at (specify court name) :

24. ☒ Other (specify):
Additional Court Orders:
1. With regards to Citee's violation of Count 1 of the 12/17/20 OSC, Citee is ordered to repay, within 90 days, the total amount of the (5) expenditures she made on 1/10/20, 1/11/20, 1/13/20, 1/17/20, and 3/17/20, in the total amount of $93,284. Said funds are to be held by Citee's counsel in a trust account for disposition by the Court at trial or by written agreement of the parties.
2. The 9/11/2021 Stipulation and Order is stayed on good cause shown until 7/29/21 or until the hearing on Respondent's RFO to modify the Order, whichever occurs earlier
3. The Petitioner's request for attorney's fees is set for further hearing on 9/15/21, with a briefing schedule as follows: Petitioner shall file and serve his moving papers no later than 7/23/21; Respondent shall file and serve her responsive papers no later than 8/23/2021; Petitioner shall file and serve his reply no later than 9/8/2021.

25. Number of pages attached: 0

Date: AUG 2 3 2021

☒ Approved as conforming to court order and findings:
Date:

▸ _____
(SIGNATURE OF ATTORNEY FOR CITEE)

☒ The citee agrees to the above terms. *The above was Ordered.*
Date:

▸ _____
(SIGNATURE OF CITEE)

**CHRISTINE BYRD**
(JUDICIAL OFFICER OF THE SUPERIOR COURT)

☐ Signature follows last attachment

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.

I am over the age of 18 and not a party to the within action; my business address is 201 South Lake Avenue, Suite 800, Pasadena, California 91101.

On July 8, 2021, I served the foregoing document (s) described as Findings and Order Regarding Contempt in this action.

__XX____ **BY MAIL**: By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Pasadena, CA addressed to the person named below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Denise Lite

DaCorsi Placencio, P.C.

21031 Ventura Blvd., Suite 640

Woodland Hills, CA, 91364-2203

__XX____ **BY ELECTRONIC MAIL**: I emailed the document(s) to counsel for RESPONDENT at the office email: dplacencio@dacorsi.net

I declare under penalty of perjury under the Laws of the State of California that the foregoing is true and correct.

Dated: 7/8/2021

Marlene Guzman
Declarant

SCHWEITZER, LAW PARTNERS APC
201 S. Lake Ave. Suite 800 | Pasadena, CA 91101
(626) 683-8113 | F: (626) 356-0102

1

PROOF OF SERVICE

# EXHIBIT "C"

EXHIBIT "C"

Received: 12/3/2021 8:32 AM

**FL-305**

| ATTORNEY OR PARTY WITHOUT ATTORNEY:          STATE BAR NO.: | FOR COURT USE ONLY |
|---|---|
| NAME: Donald P. Schweitzer 166412<br>FIRM NAME: Schweitzer Law Partners, APC<br>STREET ADDRESS: 201 S. Lake Avenue, Suite 800<br>CITY: Pasadena      STATE: CA ZIP CODE: 91101<br>TELEPHONE NO.: (626) 683-8113  FAX NO.: (626) 356-0102<br>E-MAIL ADDRESS: Don@pasadenalawoffice.com<br>ATTORNEY FOR (name): Petitioner, Henrik Agasyan | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>DEC 03 2021<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By_____Deputy<br>Gestelle Gammage |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles<br>STREET ADDRESS: 111 N. Hill Street<br>MAILING ADDRESS: same as above<br>CITY AND ZIP CODE: Los Angeles, CA 90012<br>BRANCH NAME: Central District | |
| PETITIONER: Henrik Agasyan<br>RESPONDENT: Silva Agasyan<br>OTHER PARENT/PARTY: | |
| **TEMPORARY EMERGENCY (EX PARTE) ORDERS**<br>☐ Child Custody  ☐ Visitation (Parenting Time)  ☐ Property Control<br>☒ Other (specify): See Item 6 (Other Orders) on page 2 | CASE NUMBER:<br>19STFL15220 |

1. **TO (name(s)):** Silva Agasyan
   ☐ Petitioner  ☒ Respondent  ☐ Other Parent/Party  ☐ Other (specify):

   A court hearing will be held on the *Request for Order* (form FL-300) served with this order, as follows:

   a. Date: 12/3/2021    Time: 8:30 a.m.  ☒ Dept.: 84    ☐ Room: 835

   b. Address of court ☒ same as noted above ☐ other (specify):

2. **Findings:** Temporary emergency (ex parte) orders are needed to: (a) help prevent an immediate loss or irreparable harm to a party or to children in the case, (b) help prevent immediate loss or damage to property subject to disposition in the case, or (c) set or change procedures for a hearing or trial.

**COURT ORDERS:** The following temporary emergency orders expire on the date and time of the hearing scheduled in (1), unless extended by court order:

3. ☐ **CHILD CUSTODY**

   Temporary physical custody, care, and control to:

   | a.  Child's name | Date of Birth | Petitioner | Respondent | Other Party/Parent |
   |---|---|---|---|---|
   | | | ☐ | ☐ | ☐ |
   | | | ☐ | ☐ | ☐ |
   | | | ☐ | ☐ | ☐ |
   | | | ☐ | ☐ | ☐ |

   ☐ Continued on Attachment 3(a)

   b. ☐ **Visitation (Parenting Time)** The temporary orders for physical custody, care, and control of the minor children in (3) are subject to the other party's or parties' rights of visitation (parenting time) as follows (specify):

   ☐ See Attachment 3(b)

**THIS IS A COURT ORDER.**
**TEMPORARY EMERGENCY (EX PARTE) ORDERS**

Form Adopted for Mandatory Use
Judicial Council of California
FL-305 [Rev. July 1, 2016]



Family Code, §§ 2045, 3062–3064,
Cal. Rules of Court, rules 5.151–5.169
www.courts.ca.gov

Agasyan, Henrik

FL-305

| PETITIONER: Henrik Agasyan | CASE NUMBER: |
|---|---|
| RESPONDENT: Silva Agasyan | 19STFL15220 |
| OTHER PARENT/PARTY: | |

**3. ☐ CHILD CUSTODY (continued)**

    **c. Travel restrictions**

        (1) The party or parties with temporary physical custody, care, and control of minor children **must not remove the minor children from the state of California unless the court allows it after a noticed hearing.**

        (2) ☐ Petitioner   ☐ Respondent   ☐ Other Parent/Party   must not remove their minor children (*specify*):
            (a) ☐ from the state of California.
            (b) ☐ from the following counties (*specify*):
            (c) ☐ other (*specify*):

    **d. ☐ Child abduction prevention orders** are attached (see form FL-341(B)).

    **e.** (1) **Jurisdiction:** This court has jurisdiction to make child custody orders in this case under the Uniform Child Custody Jurisdiction and Enforcement Act (part 3 of the California Family Code, commencing with section 3400).

        (2) **Notice and opportunity to be heard:** The responding party was given notice and an opportunity to be heard as provided by the laws of the State of California.

        (3) **Country of habitual residence:** The country of habitual residence of the child or children is (*specify*):
            ☐ The United States of America   ☐ Other (*specify*):

        (4) **If you violate this order, you may be subject to civil or criminal penalties, or both.**

**4. ☐ PROPERTY CONTROL**

    **a.** ☐ Petitioner   ☐ Respondent   ☐ Other Parent/Party   is given exclusive temporary use, possession, and control of the following property that the parties   ☐ own or are buying   ☐ lease or rent

    **b.** ☐ Petitioner   ☐ Respondent   ☐ Other Parent/Party   is ordered to make the following payments on the liens and encumbrances coming due while the order is in effect:

| Pay to: | For: | Amount: $ | Due date: |
|---|---|---|---|
| Pay to: | For: | Amount: $ | Due date: |
| Pay to: | For: | Amount: $ | Due date: |
| Pay to: | For: | Amount: $ | Due date: |

**5. ☐** All other existing orders, not in conflict with these temporary emergency orders, remain in full force and effect.

**6. ☒ OTHER ORDERS** (*specify*):   ☐ Additional orders are listed in Attachment 6.

1) Respondent shall immediately transfer any and all remaining funds from the $400,000 Home Equity Line of Credit ("HELOC")she acquired using the Former Family Residence as collateral, in direct violation of her fiduciary duties and the Standard Family Law Orders. Said funds shall be transferred into a previously established client trust account maintained by Petitioner's attorney's office, Schweitzer Law Partners;.
2) Respondent shall immediately provide an accounting of any and all funds spent from the $400,000 Home HELOC.
3) Respondent shall immediately cease any and all further expenditures of the HELOC funds.
4) Any orders in (1)-(4) not made on an ex-parte basis shall be set on shortened time.

ate: 12/3/21

**THIS IS A COURT ORDER.**   JUDGE OF THE ~~SUPERIOR COURT~~   MICHELLE L. KAZADI

Agasyan, Henrik

In Re IRMO Agasyan                                         LASC Case No. 19STFL15220

**Declaration of Henrik Agasyan**

I, Henrik Agasyan, declare as follows:

1.     I am the Petitioner in the above-entitled matter.  The facts contained in this Declaration are known to me of my own personal knowledge, and I am competent to testify thereto.

2.     I submit this Declaration in support of my *Ex-Parte* Request for Orders for the following relief:

> a.   An Order that Respondent, Silva Agasyan, immediately provide an accounting of any and all funds spent from the $400,000 Home Equity Line of Credit ("HELOC") loan she acquired using the Former Family Residence as collateral in direct violation of her fiduciary duties and the Standard Family Law Orders;
>
> b.   An Order that Respondent immediately transfer any and all remaining HELOC funds into a previously established client trust account maintained by Petitioner's attorney's office, Schweitzer Law Partners;
>
> c.   An Order that Respondent immediately cease any and all further expenditures of the HELOC funds; and
>
> d.   Alternatively, that any orders in (a)-(d) not made on an *ex-parte* basis be set on shortened time.

### *EX-PARTE* RELIEF IS NECESSARY

3.     *Ex-parte* relief is necessary to ensure that Respondent is estopped from further squandering unlawfully obtained community property money, significantly diminishing the equity in the Former Family Residence, and further impeding my ability to recoup my fair share of the community property.

4.     At or around 5:00 p.m. on November 29, 2021, Respondent exchanged with me her Mandatory Settlement Conference ("MSC") Brief. I was left completely speechless when I read the following sentence on page (12) of her Brief:

SCHWEITZER LAW, ARTNERS, APC
201 S. Lake Ave. Suite 800 | Pasadena, CA 91101
(626) 683-8113 | F: (626) 356-0102

1

> *"On or about May 2021, Respondent was forced to apply for and accept a*
> *Home Equity Line of Credit in the amount of $400,000.00."*

Attached hereto, marked as **Exhibit "A"** and incorporated herein by reference is a copy of the relevant page from Respondent's Brief.

5. Respondent goes on to admit that the HELOC was taken against the Former Family Residence located in Burbank, CA. Respondent provided absolutely no notice and did not obtain my written consent prior to encumbering the Family Residence and admittedly taking out the entirety of the $400,000 for alleged "living expenses."

6. Respondent's actions not only violated her fiduciary duties, but also the Standard Family Law Restraining Orders. The equity in that home is my only remaining asset. Without that, I will be unable to afford continued legal representation. Additionally, Respondent's actions further impede my ability to recover my one-half interest in the Family Residence, which again is my only remaining asset.

7. This is not the first time Respondent has engaged in such behavior. Pre-separation, Respondent had transferred to herself the sum of almost $400,000 without my knowledge or consent, guaranteeing that she would have endless legal representation. Following the filing of the Petition for Dissolution, Respondent began spending down on the community money with no notice to me and in direct violation of the Standard Family Law Restraining Orders. On 9/11/2020, we entered into a Stipulation and Order to list the former family residence for sale. Not surprising, Respondent refused to cooperate with this Order as well.

8. On 6/23/21, Respondent was found in contempt for her violation of the Standard Family Law Restraining Orders and the 9/11/2020 Stipulation and Order.

9. I am afraid that unless there is Court intervention, Respondent will spend the entirety of the $400,000, especially given her history of violating court orders, violating her fiduciary duties, unilaterally transferring to herself the sum of $392,000 in community funds, and spending down $250,000 in a matter of a few months.

10. In fact, my attorney had previously indicated to Respondent that I was not in agreement with her using any of the HELOC funds. Notwithstanding my written notice that

SCHWEITZER LAW PARTNERS, APC
201 S. Lake Ave. Suite 800 | Pasadena, CA 91101
(626) 683-8113 | F: (626) 356-0102

2

DECLARATION OF PETITIONER, HENRIK AGASYAN, IN SUPPORT OF *EX-PARTE RFO*

1   Respondent shall not use the HELOC funds, she went ahead and did so without the Court's

2   approval.

3        11.    On April 8, 2021, my attorney sent Respondent's attorney a letter regarding our

4   objection to Respondent encumbering the Family Residence. Attached hereto, marked as **Exhibit**

5   **"B"** and incorporated herein by reference is a copy of the letter.

6   <u>**RELEVANT BACKGROUND AND PROCEDURAL HISTORY**</u>

7        12.    Respondent and I were married on June 21, 2003, and separated on December

8   20, 2019. We have two minor children together, Charisse, a female, age 11, and Shyla, a female,

9   age 3.

10        13.    Throughout the marriage, we maintained a trust account at Golden State Bank

11   (hereinafter the "AHAS Trust Account"). Respondent has been a salaried employee of Golden

12   State Bank ("GSB") since 2018. We funded the AHAS Trust Account with equal privileges and

13   access to the funds therein, that is until November 2019.

14        14.    In early November 2019, Respondent opened an account at GSB under her

15   name only and instructed GSB to apply an internal code to both accounts, causing GSB to "hold

16   for employee pickup" all account documents, including statements.

17        15.    On November 19, 2019, Respondent wrote a check from the AHAS Trust

18   Account to her Personal Account in the amount of $250,000. This was done without my

19   knowledge or consent. On December 18, 2019, I went to the GSB Glendale Branch, discovered

20   this outrageous unilateral act by Respondent, and attempted to save the remainder of the funds

21   in the AHAS Trust Account, which at that time was $141,743.32. Respondent was warned by

22   her colleagues at GSB about my presence at the bank, intercepted the transfer, and again

23   transferred to herself the remaining $141,743. GSB eventually froze the $141,743 and filed an

24   Interpleader Action, which was resolved on October 21, 2021.

25        16.    Following our separation just one month later, Respondent proceeded to spend

26   down on the $250,000 of community property monies she absconded with without providing any

27   notice or accounting. She pre-paid for a luxury Mercedes Benz SUV, went on shopping sprees,

28   and took out large cash withdrawals.

SCHWEITZER LA    ARTNERS, APC
201 S. Lake Ave. Suite 800 | Pasadena, CA 91101
(626) 683-8113 | F: (626) 356-0102

3

1    17.    On June 23, 2021, Respondent was found guilty on two (2) counts of contempt.

2  She was found guilty of violating the Standard Family Law Restraining Orders by knowingly

3  and willfully making several extraordinary expenditures without providing notice to me and

4  accounting to the Court. Respondent was ordered to repay me the total sum of $94,250.

5  Specifically, the Court found Respondent violated the Order by knowingly and willfully making

6  the following 5 expenditures

7            a.   January 10, 2020, check to herself in the amount of $23,650.

8            b.   January 11, 2020, $27,066 towards the lease of a new vehicle for herself.

9            c.   January 13, 2020, check to herself in the amount of $9,689.

10           d.   January 17, 2020, check to herself in the amount of $13,945.

11           e.   March 17, 2020, check to herself in the amount of $20,000.

12   18.    Respondent was also found guilty of failing to follow our 9/11/2020 Stipulation

13  and Order to list for sale the Former Family Residence. Attached hereto, marked as **Exhibit "C"**

14  and incorporated herein by reference is a copy of the 6/23/21 Minute Order.

15   19.    On September 15, 2021, Respondent was ordered to pay for my attorney and

16  forensic accountant fees incurred in connection with the contempt proceedings in the total

17  amount of $56,410. Attached hereto, marked as **Exhibit "D"** and incorporated herein by

18  reference is a copy of the 9/15/2021 Minute Order.

19   20.    As evidenced by the above, Respondent has continuously thumbed her nose at

20  this Court and its orders. Even now, Respondent is refusing to sign the Listing Agreement for

21  the Family Residence, even though this Court ordered the sale and appointed real estate agents

22  already. Time and time again, Respondent has violated her fiduciary duties, she has violated the

23  Standard Family Law Restraining Orders, she has violated Stipulations and even the Court's own

24  orders.

25  //

26  //

27  //

28  //

SCHWEITZER LAW PARTNERS, APC
201 S. Lake Ave. Suite 800 | Pasadena, CA 91101
(626) 683-8113 | F: (626) 356-0102

4

## **CONCLUSION**

21.     Based on the foregoing, I respectfully request that the Court grant my *ex-parte* relief. Given Respondent's history, I am afraid that without Court intervention she will squander the entirety of the $400,000 and leave me with absolutely no money and no legal representation.

22.     The Court has already ordered my attorney to hold the $94,350 from the contempt trial and the $141,000 (minus GSB's attorney fees) from the Interpleader case in the previously established client trust account. I request that any and all remaining HELOC funds are immediately transferred to the same trust account not to be removed until further agreement or Court order.

I hereby declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed on _12 - 2 - 2021_, at Pasadena, California.

_____
Declarant
Henrik Agasyan
Petitioner

DECLARATION OF PETITIONER, HENRIK AGASYAN, IN SUPPORT OF *EX-PARTE RFO*

SCHWEITZER LA    ARTNERS, APC
201 S. Lake Ave. Suite 800 | Pasadena, CA 91101
(626) 683-8113 | F: (626) 356-0102

# EXHIBIT "D"

# EXHIBIT "D"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Family Division**

**Stanley Mosk Dept. - 42**

**19STFL15220**

**Agasyan, Henrik**

**vs**

**Agasyan, Silva**

**September 15, 2021**

**1:30 PM**

Honorable Christine Byrd, Judge

Lily Yu, Judicial Assistant                          Geraldine Viray (#7267), Court Reporter

---

**NATURE OF PROCEEDINGS:    Hearing Re:  Attorney's Fees-Argument**

The following parties are present for the aforementioned proceeding:

> **In Person Appearances:**
>
> Donald P. Schweitzer, Attorney for Petitioner
> Mane Hakobyan, Attorney for Petitioner
>
> **Appearances via LACourtConnect-Video:**
>
> Silva Agasyan, Respondent
> Denise Lite, Attorney for Respondent

Counsel have been provided with the Court's Tentative Ruling.

The matter is called for hearing.

The Court hears argument by both sides.

The Court makes its findings in open court as fully reflected in the official notes of the Court Reporter.

The Court rules as follows:

Respondent shall pay to the Petitioner the sum of $42,406 as Attorney's Fees, $14,004 for costs ($10,204.00 for Forensic Accountant Fees prior to trial + $3,800.00 for time testifying at trial), the total amount of $56,410, payable to Petitioner's Counsel within 60 days of September 15, 2021.  If the total amount is not paid in full by November 9th, and if the residence is listed for sale as of that date, then any unpaid balance is to be paid from the escrow.  If the Residence is not listed for sale by November 9th, the unpaid balance shall accrue interest at the legal rate commencing November 10, 2021, until it is paid in full.

Counsel for Petitioner shall prepare the Order After Hearing.

---

# EXHIBIT "E"

# EXHIBIT "E"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

### Family Division
### Stanley Mosk Dept. - 84

**19STFL15220**
**Agasyan, Henrik**
**vs**
**Agasyan, Silva**

**May 6, 2022**
**8:30 AM**

Honorable Michelle L. Kazadi, Judge

Gestelle Gammage, Judicial Assistant                    Thelma Fong (#7986), Court Reporter

---

**NATURE OF PROCEEDINGS:** Ex Parte Hearing

The following parties are present for the aforementioned proceeding:

> Henrik Agasyan, Petitioner
> Silva Agasyan, Respondent
> Anthony Lai, Attorney for Petitioner
> Don Schweitzer, Attorney for Petitioner
> Taline Boyamian, Attorney for Respondent

The matter is called for hearing.

LACourtConnect appearances by:

Silva Agasyan

The matter is argued.

Petitioner's request for an order for Respondent to sign grant deed is moot as the sale is no longer pending.

Petitioner's request for sanctions pursuant to Family Code section 271 is granted. The Court finds that Respondent's conduct is sanctionable as she has delayed the sale of the property. Respondent is ordered to pay to Petitioner sanctions in the amount of $10,000.00. Said sanctions shall be paid from the sale of the home.

If another buyer is found and Respondent fails to timely sign escrow documents or contracts for sale, Petitioner may file an ex parte application requesting for Elisor to sign and for Petitioner to take possession and have sole authority to sale property.

Counsel for Petitioner is to prepare the written Order After Hearing, serve it on the opposition for approval as to form and content and submit same to the Court for signature.

---

Minute Order                                    Page 1 of 1